UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

DORIS FONTANEZ,
Individually and on behalf of all others similarly situated,

    Plaintiffs,

v.                                                         Case No: 8:22-cv-2538-KKM-TGW

WOLVERINE WORLD WIDE, INC.

    Defendant.
_____

# ORDER

The Florida Telephone Solicitation Act (FTSA) prohibits telephone solicitors from making "a telephonic sales call if such call involves an automated system for the selection or dialing of telephone numbers or the playing of a recorded message when a connection is completed to a number called without the prior express written consent of the called party." Fla. Stat. § 501.059(8)(a). Doris Fontanez allegedly received at least one unsolicited text message from Wolverine World Wide, Inc., and sued on behalf of herself and others similarly situated for violations of the FTSA. (Doc. 1-1; Doc. 12.) Fontanez alleges no tangible harm suffered by her receipt of the unsolicited text message. Instead, Fontanez asserts that Wolverine "adversely affected and infringed upon [her] legal rights not to be subjected to the illegal acts at issue." (Doc. 12 ¶ 4.)

Fontanez filed this putative class action in state court in September 2022, and Wolverine removed the action under the Class Action Fairness Act (CAFA) in November 2022. (Doc. 1.) Wolverine moves to compel arbitration and to dismiss the action. (Doc. 8.) In response, Fontanez moves to remand, (Doc. 9), which Wolverine opposes, (Doc. 11). Fontanez also filed an amended complaint. (Doc. 12.) Because this Court lacks subject matter jurisdiction over Fontanez's claim, the Court remands to state court.

The party removing a case to federal court bears the burden of establishing subject matter jurisdiction. *See Mack v. USAA Cas. Ins. Co.*, 994 F.3d 1353, 1356 (11th Cir. 2021). In addition, federal courts must independently assure themselves that they have jurisdiction over a case at every stage, regardless of whether the parties raise the issue or agree that jurisdiction exists. *See Plains Com. Bank v. Long Fam. Land & Cattle Co.*, 554 U.S. 316, 324 (2008); *United States v. Ross*, 963 F.3d 1056, 1062 (11th Cir. 2020). As such, after removal, "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c).

Article III limits the jurisdiction of federal courts to "Cases" and "Controversies," *see TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2203 (2021); *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 559 (1992), thereby "confin[ing] the federal courts to a properly judicial role," *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). The case-or-controversy requirement permits federal courts to exercise their power only for "the determination of

2

real, earnest, and vital controversy between individuals." *Chi. & Grand Trunk Ry. Co. v. Wellman*, 143 U.S. 339, 345 (1892). To demonstrate standing, the party invoking federal jurisdiction must prove three elements: the plaintiff must have suffered an injury in fact, the defendant must have caused that injury, and a favorable decision must be likely to redress it. *Lujan*, 504 U.S. at 560–61.

An injury in fact means "an invasion of a legally protected interest" that is both "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Id.* at 560 (internal quotation marks and quotations omitted). Relevant here, a concrete injury must be "*de facto*," meaning "it must actually exist"—it must be " 'real,' and not 'abstract.' " *Spokeo*, 578 at 340 (quotation omitted); *see TransUnion*, 141 S. Ct. at 2204.

A "bare procedural violation, divorced from any concrete harm, [cannot] satisfy the injury-in-fact requirement of Article III." *Spokeo*, 578 U.S. at 341; *see also Hunstein v. Preferred Collection & Mgmt. Servs., Inc.*, 48 F.4th 1236, 1243 (11th Cir. 2022). "In particular, a plaintiff does not 'automatically satisf[y] the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right.' " *Trichell v. Midland Credit Mgmt., Inc.*, 964 F.3d 990, 997 (11th Cir. 2020) (quoting *Spokeo*, 578 U.S. at 341) (alteration in original).

To evaluate concreteness of an intangible injury from a statutory violation, the Supreme Court has instructed courts to look at "history and the judgment of Congress."

3

*Spokeo*, 578 U.S. at 340. Regarding the latter, "Congress is well positioned to identify intangible harms that meet minimum Article III requirements," *Spokeo*, 578 U.S. at 341, but Congress may not "creat[e] new injuries out of whole cloth," *Hunstein,* 48 F.4th at 1243. Thus courts should not end their analysis there. For the history prong, courts "look to see if it matches up with a harm 'traditionally recognized as providing a basis for lawsuits in American courts.' " *Hunstein,* 48 F.4th at 1242 (quoting *TransUnion*, 141 S. Ct. at 2204).

Applying this test to an alleged violation of the Telephone Consumer Protection Act (TCPA), the Eleventh Circuit has held that "history and the judgment of Congress do not support finding concrete injury" for receipt of a single unsolicited text message. *Salcedo v. Hanna*, 936 F.3d 1162, 1165, 1172 (11th Cir 2019). Indeed, "[t]he chirp, buzz, or blink of a cell phone receiving a single text message is more akin to walking down a busy sidewalk and having a flyer briefly waived in one's face." *Id.* at 1172. A "brief, inconsequential annoyance" is "not a basis for invoking the jurisdiction of the federal courts." *Id.*

As an initial matter, Wolverine argues that Fontanez's complaint at the time of removal—not the amended complaint—governs for purposes of determining jurisdiction. (Doc. 14 at 7–8.) But because the Court has an independent responsibility to evaluate its jurisdiction at every stage of the case, the Court examines both the original complaint and

4

the amended complaint (which Rule 15(a) permitted Fontanez to file) and concludes that Fontanez lacks Article III standing under either pleading.

Wolverine—as the removing party—must show Fontanez's injury rises to the level of concreteness required of Article III. It has not done so. Fontanez alleges Wolverine violated § 501.059 of the FTSA by sending her (and the other members of the putative class) an unsolicited text message advertising the company's shoes. (Doc. 12 ¶ 12.) These facts mirror the claim in *Salcedo*. Although that case concerned alleged violations of the TCPA, the same reasoning applies to the FTSA. If a single text message did not constitute a concrete injury under the federal statute, it cannot constitute a concrete injury under a state law analog.

Even if Fontanez received a handful of unsolicited text messages (which the original complaint appeared to indicate) (*see* Doc. 1-1 at 10), she still lacks a concrete injury. As *Salcedo* reasoned, the standing inquiry is qualitative, not quantitative. 936 F.3d at 1172–73. And the irritation of an unsolicited text message is qualitatively insufficient. *Id.* Thus, the marginal further annoyance of additional text messages following the first does not create standing here. *Accord*, *Iuliano v. United Health Group, Inc.*, No. 22-cv-2299 (M.D. Fla. Dec. 9, 2022) (Merryday, J.) (remanding for lack of standing with evidence of four text messages); *Frater v. Lend Smart Mortg., LLC*, No. 22-22168, 2022 WL 4483753, at *4 (S.D. Fla. Sept. 27, 2022) (Scola, J.) (dismissing for lack of standing an FTSA class action

5

when plaintiff alleged being "bombarded" with unsolicited text messages); *Mittenthal v. Fla. Panthers Hockey Club, Ltd.*, 472 F.Supp.3d 1211, 1216, 1225 (S.D. Fla. July 14, 2020) (Altman, J.) (remanding for lack of standing with "around 10" text messages); *Eldridge v. Pet Supermarket Inc.*, 446 F.Supp.3d 1063, 1070, 1072 (S.D. Fla. March 9, 2020) (Williams, J.) (remanding for lack of standing with five text messages). The lack of standing is particularly obvious here, where Fontanez does not allege that she wasted time or tangible resources because of the text messages. She does not even allege that she read the messages, that the messages consumed her phone battery or data, or that she suffered any annoyance. Wolverine offers no evidence to the contrary. Thus, whether Fontanez alleges receipt of one text message or three text messages, her failure to allege any concrete injury means this Court lacks jurisdiction and must remand. *See* 28 U.S.C. § 1447(c).

Wolverine primarily attacks this conclusion by arguing that the Supreme Court either "implicitly overruled *Salcedo*" or "abrogate[d]" it. (Doc. 11.) As support, Wolverine argues that *Salcedo* "must give way to the Supreme Court's decision in *TransUnion*," especially because it favorably cited a decision from another circuit that held unsolicited text messages sufficient to confer Article III standing. (Doc. 11 at 4, 8.) "While an intervening decision of the Supreme Court can overrule the decision of [the Eleventh Circuit], the Supreme Court decision must be clearly on point." *United States v. Archer*, 531 F.3d 1347, 1352 (11th Cir. 2008); *Garrett v. Univ. of Ala. at Birmingham Bd. of Trs.*,

6

344 F.3d 1288, 1292 (11th Cir. 2003). *TransUnion* is not on point, much less clearly so. There, the Supreme Court addressed the proper methodology for evaluating whether intangible harms satisfy the concreteness of Article III. And post-*TransUnion*, the en banc Eleventh Circuit has acknowledged that "[t]he Supreme Court has since ratified our approach." *Hunstein*, 48 F.4th at 1239. If anything, *TransUnion* fortified the Eleventh Circuit's analysis of standing for intangible harms.

As to the particulars, *TransUnion* raised very different factual considerations. There, consumers with false alerts associated with their credit files sued a credit reporting agency under the Fair Credit Reporting Act. *TransUnion*, 141 S. Ct. at 2200. The Court concluded that only those consumers who had their information shared with third-party businesses had a concrete reputational harm and thus Article III standing. *Id.* at 2209. The Court never addressed text messages.

Finally, *TransUnion*'s lone "*see also*" citation to a Seventh Circuit case that concluded differently than *Salcedo* about standing in the context of text messages does not equate with overruling or abrogating *Salcedo*. That is especially so when the Supreme Court cited the case for the proposition that intangible harms must have a "close relationship to harms traditionally recognized as providing a basis for lawsuits in American courts" and that case had analogized the harm to intrusion upon seclusion. *Id.* at 2204. Notably, Wolverine does not argue that unsolicited text messages are akin to the common

7

law tort of intrusion upon seclusion. In fact, Wolverine never attempts to compare the aggravation of unsolicited text messages with any tort or traditional harm giving rise to a lawsuit in American courts.

Further, nothing about cases removed from state court to federal court under CAFA changes the standing analysis. If anything, *TransUnion* and subsequent Eleventh Circuit precedent clarified that each member of a class action must have an injury in fact because federal courts cannot "award damages to plaintiffs who do not have Article III standing." *Drazen v. Pinto*, 41 F.4th 1354, 1362 (11th Cir. 2022). Applying this rule, the Eleventh Circuit recently rejected a class definition because "it allow[ed] standing for individuals who received a single text message from [the defendant]." *Id.* at 1362. This putative class action is worse yet, as the class representative herself lacks standing.

Wolverine's remaining arguments regarding Fontanez's alleged attempts to escape federal jurisdiction by altering the amount in controversy miss the point. (Doc. 14 at 8–9.) Regardless of the amount in controversy or diversity of the parties, the Court must have Article III jurisdiction. Wolverine has failed to show that here.

In addition to remand, Fontanez requests attorney's fees and costs because "the removal here was obviously unreasonable." (Doc. 9 at 11.) Fontanez claims that Wolverine "has been on notice . . . all along" that the federal courts lack subject matter jurisdiction over her claim. (*Id.*) Perhaps Wolverine knew it faced unfavorable Eleventh Circuit

8

precedent, but that caselaw focused on receipt of a *single* text message. *Salcedo*, 41 F.4th at 1363. Fontanez's original complaint contained a screenshot of at least three text messages that she received from Wolverine, despite Wolverine's notice of removal describing it as "one text message." (*See* Doc. 1 at 2; Doc. 1-1.) Fontanez's amended complaint now contains a screenshot of a single text message. (Doc. 12 ¶ 12.) Although standing is lacking even if premised on three text messages, it was not unreasonable for Wolverine to remove based on Fontanez's original complaint. Because "the standard for awarding fees should turn on the reasonableness of the removal," and Fontanez did not file her amended complaint alleging receipt of a single text message until after Wolverine removed the case, the Court denies Fontanez's request for attorney's fees and costs. *See Martin v. Franklin Cap. Corp.*, 546 U.S. 132, 141 (2005).

Accordingly, the following is **ORDERED:**

1. Fontanez's Motion to Remand (Doc. 9) is **GRANTED**.

2. Fontanez's request for attorney's fees is **DENIED**.

3. Wolverine World's Motion to Compel Arbitration (Doc. 14) is **DENIED without prejudice.**

4. The Clerk is directed to **REMAND** this action to the Circuit Court of the Ninth Judicial Circuit, in and for Polk County, Florida, and to transmit a

9

certified copy of this order to the clerk of that court; to **TERMINATE** any pending motions and deadlines; and to **CLOSE** this case.

**ORDERED** in Tampa, Florida, on December 27, 2022.

Kathryn Kimball Mizelle
United States District Judge